United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 04, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 14-50155** |
| **GBG RANCH, LTD, A TEXAS LIMITED** | § | |
| **PARTNERSHIP,** | § | **CHAPTER 11** |
| | § | |
| Debtor. | § | |
| | § | |
| **NORMA BENAVIDEZ-HUNT,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 16-5005** |
| | § | |
| **G.B.G. RANCH, LTD.,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
### (Docket No. 257)

Norma Benavidez-Hunt ("Mrs. Hunt") seeks relief from the Court's confirmation order entered in the main bankruptcy case under 11 U.S.C. § 1144 and FED. R. CIV. P. 60.  Although the requested relief has changed over time, Mrs. Hunt now requests the Court to use its equitable power to divest her brother, Manuel Benavides, and his controlled trusts and affiliates from any ownership interest in the Hill Ranch.  [Docket No. 544].  While the imposition of such a remedy is intellectually appealing and would result in the completion of the family divorce the Court promised the parties at the initiation of the bankruptcy case in 2014, the Court lacks the requisite authority to grant Mrs. Hunt's request.  The Court does, however, possess sufficient authority to prevent illicit gains from a perversion of the bankruptcy system and to hold those persons that participate in such a perversion accountable.  The Court grants limited relief as set forth below.

## Background

### The Parties and their Related Entities

The Benavides family was once a prominent family in Laredo, Texas. [Docket No. 5].  Over time, the family amassed thousands of acres of South Texas ranchland which were successfully exploited for energy production, ranching and hunting.  [Docket No. 5, Case No. 14-50155, Docket No. 477].  These activities provided the Benavides family with significant wealth.  With the physical decline and subsequent passing of Guillermo Benavidez Sr., however, intra-family bickering took over resulting in significant waste of that wealth, including a series of

expensive and self-defeating lawsuits (the "State Court Litigation"). [Case No. 14-50155, Docket No. 360, Sec. III.C.].

Mrs. Hunt, Guillermo Benavides Z ("Memo Benavides"), Manuel A. Benavides ("Guero Benavides") and Ana Claudia Benavides ("ACB") are the children of Guillermo Benavidez Sr. and Norma Z. Benavides ("Norma Benavides"). [Def. Exhibit 1]. Pursuant to his last will and testament, all of Guillermo Benavidez Sr.'s property was placed into a residuary trust for the benefit of his wife and children (the "Residuary Trust"). [Def. Exhibit 1]. Memo Benavides, Guero Benavides and Norma Benavides were appointed as co-trustees of the Residuary Trust. [Def. Exhibit 1]. Upon the death of Norma Benavides, the corpus of the Residuary Trust was to be distributed equally to Mrs. Hunt, Memo Benavides, Guero Benavides and the ACB 1991 Trust. [Def. Exhibit 1]. Norma Benavides died on April 6, 2016. [Docket No. 530, Transcript, pg. 110].

GBG Ranch, LTD. (the "Debtor") is a Texas limited partnership created in 2006 to own and manage approximately 20,680 acres of Benavides family ranch land. [Def. Exhibit 11 and Case No. 14-50155, Docket No. 360]. This land is divided among three ranches—the Corazon, the Hill and the Oilton (collectively, the "Ranches" and individually as the "____ Ranch"). [Case No. 14-50155, Docket No. 360]. The Debtor's ownership structure is comprised as follows:

| | |
|---|---|
| Guero Benavides and related trusts: | 39% Limited Partnership interest |
| Memo Benavides and related trusts: | 39% Limited Partnership interest |
| Residuary Trust: | 20% Limited Partnership interest |
| Guillermo Benavides Garza | |
| Investment Company ("GBGIC") | 02% General Partnership interest |

[Case No. 14-50155, Docket No. 360].

GBGIC is a Texas corporation with two hundred shares of authorized stock. [Def. Exhibit 5]. Guero Benavides and the Residuary Trust each own 100 shares of GBGIC. [Def. Exhibit 7].

Quita Wind Energy Co., L.L.C. ("Quita Wind") is a Texas limited liability company formed August 10, 2006. [Def. Exhibit 12]. The original members of Quita Wind included GBGIC, Memo Benavides, Guero Benavides, the Residuary Trust, and several affiliated children's trusts. [Def. Exhibit 12]. On or about November 2, 2006, the Debtor assigned all wind rights related to the Ranches to Quita Wind for a period of 99 years. [Hunt Exhibit 97]. On March 31, 2014, Quita Wind subleased its rights in the Oilton Ranch to Torrecillas Wind Energy, LLC, a Delaware limited liability company ("Torrecillas"). [Hunt Exhibit 97].

### The Debtor's Bankruptcy Filing

The Debtor filed a voluntary chapter 11 case on July 8, 2014. [Case No. 14-50155, Docket No. 1]. By Order entered July 30, 2014, the Court approved the employment of Carl Barto as the Debtor's general bankruptcy counsel. [Case No. 14-50155, Docket No. 20]. By Order entered August 27, 2014, the Court approved the employment of Leslie Luttrell as special counsel for the Debtor. [Case No. 14-50155, Docket No. 25]. Ms. Luttrell's stated duties largely mimicked those of general counsel. [Compare Case No. 14-50155, Docket No. 24 with Case No. 14-50155, Docket

No. 15].  On September 18, 2014, Kenneth Valls filed a notice of appearance on behalf of "Memo Benavides in his derivative capacity on behalf of the GBG Ranch, Ltd." and Anam, Ltd. [Case No. 14-50155, Docket No. 39].  No explanation has ever been provided regarding the "derivative capacity" of this appearance.  The docket does not reflect that this "derivative capacity" representation was ever withdrawn.

On September 19, 2014, Memo Benavides filed a motion seeking either the dismissal of the bankruptcy case or the appointment of a chapter 11 trustee. [Case No. 14-50155, Docket No. 40].  The motion is signed by James Hoffman.  [Case No. 14-50155, Docket No. 40].  In the motion, Memo Benavides asserted that the bankruptcy filing was made in bad faith and that Guero Benavides had contrived the bankruptcy in a scheme to deprive him of valuable property rights. [Case No. 14-50155, Docket No. 40].

On September 23, 2014, Memo Benavides filed a motion to enforce a series of Rule 11 agreements entered into during the State Court Litigation.  [Case No. 14-50155, Docket No. 42]. These agreements addressed various aspects of (i) the administration of the Debtor's businesses, (ii) the sale of the Debtor's assets, (iii) ongoing litigation issues, including caps on attorneys' fees, and (iv) the review of and approval of ongoing operating costs of the Debtor's businesses.  [Case No. 14-50155, Docket No. 42].  The motion was again signed by James Hoffman on behalf of Memo Benavides.  [Case No. 14-50155, Docket No. 42].

On October 16, 2014, the Court convened a hearing on the motion to dismiss.  [Case No. 14-50155, Docket No. 88].  Mr. Valls appeared on behalf of Memo Benavides, individually, and Santos Vargas.  [Case No. 14-50155, Docket No. 88].  During the hearing, the parties agreed to continue the hearing to October 17, 2014, to discuss (i) whether the appointment of an examiner was appropriate; and (ii) the status of a proposed sale of a portion of the Hill Ranch.  [Case No. 14-50155, Docket No. 88].  After the continued hearing, the Court entered an order on October 17, 2014, directing the United States Trustee to appoint an examiner.  [Case No. 14-50155, Docket No. 91].  On October 22, 2014, the Court approved the appointment of Ronald Hornberger as the examiner in the case (the "Examiner").  [Case No. 14-50155, Docket No. 96].  The Court directed the Examiner to meet with all the parties and prepare a recommendation on his proposed role in the bankruptcy case.  [Case No. 14-50155, Docket No. 91].  The Examiner provided his initial views during a hearing on November 7, 2014.  [Case No. 14-50155, Docket No. 123].  On November 13, 2014, the Court amended its prior order appointing the Examiner to set forth an expanded list of ongoing duties, including oversight of all asset sales, investigation of claims and the preparation of a comprehensive report.  [Case No. 14-50155, Docket No. 131].

On December 8, 2014, the Debtor filed its "**Chapter 11 Plan of Reorganization** and accompanying Disclosure Statement in Support of **Chapter 11 Plan of Liquidation**."  [Case No. 14-50155, Docket Nos. 155 and 154, emphasis added to highlight inconsistencies].  Both documents are signed by Guero Benavides, Ms. Luttrell and Mr. Barto.  [Case No. 14-50155, Docket Nos. 155 and 154].  In hindsight, the misnomers in the titles of these documents were the first indicators of an ongoing pattern of problematic behavior by the Debtor's professionals.  The proposed plan provided that:

> [t]he Plan contemplates a complete liquidation of the Debtor through the combination of the sale of the Plan Assets and the conveyance of the Trust Assets to the GBG Ranch Trust. **The ultimate goal of this process is to permit each of the Equity Interest Owners of the Debtor to separately receive the value of their interest in the Debtor through the combination of direct cash payment, net of the Plan Obligations, out of the sale of the Plan Assets and receive their respective beneficial interest as Surface Revenue Beneficiaries and/or Wind Revenue Beneficiaries through the GBG Ranch Trust of the life of that trust**.

(emphasis added, errors included) [Case No. 14-50155, Docket No. 155].

On May 19, 2015, the Debtor filed its "First Amended Chapter 11 Plan of Liquidation and accompanying First Amended Disclosure Statement in Support of Chapter 11 Plan of Liquidation." [Case No. 14-50155, Docket Nos. 277 and 276]. Both documents are signed by Guero Benavides, Ms. Luttrell and Mr. Barto. [Case No. 14-50155, Docket Nos. 277 and 276]. The proposed amended plan provided that

> [i]t is intended that the Debtor's plan shall be a plan of liquidation **with all revenue remaining** after the payment of allowed third party claims, costs of administration (including professional fees and U.S. Trustee's fees), and liquidation of insider and related party claims, **to be distributed to the equity interest owners of the Debtor in proportion to their ownership immediately preceding the Petition date**.

(emphasis added) [Case No. 14-50155, Docket No. 277]. During a hearing on June 5, 2015, the Court scheduled a hearing for July 22, 2015, to consider approval of the Debtor's disclosure statement pursuant to 11 U.S.C. § 1125. [Case No. 14-50155, unnumbered entry after Docket No. 310]. The hearing was subsequently continued to August 7, 2015. [Case No. 14-50155, unnumbered entry after Docket No. 357].

By Order entered August 7, 2015, the Court approved the Debtor's disclosure statement based, in part, on the announcement of certain modifications to be made to both the disclosure statement and the proposed plan. [Case No. 14-50155, Docket No. 366]. The Court set a hearing to consider confirmation of the proposed plan for October 14, 2015. [Case No. 14-50155, Docket No. 366].

On August 14, 2015, the Debtor filed its Second Amended Chapter 11 Plan of Liquidation and Third Amended Disclosure Statement incorporating the changes announced at the August 7, 2015, hearing. [Case No. 14-50155, Docket Nos. 374 and 371]. Both documents are signed by Guero Benavides, Ms. Luttrell and Mr. Barto. [Case No. 14-50155, Docket Nos. 374 and 371].

On September 24, 2015, Memo Benavides requested that the confirmation hearing be rescheduled to allow United States Bankruptcy Judge Marvin Isgur to conduct a mediation with the parties. [Case No. 14-50155, Docket No. 409]. The motion is signed by Mr. Valls' firm and James Hoffman. [Case No. 14-50155, Docket No. 409]. The Court (i) granted the request by Order entered September 25, 2015; and (ii) rescheduled the confirmation hearing for November 20, 2015. [Case No. 14-50155, Docket No. 412]. On September 28, 2015, the Debtor filed its

motion to reconsider the September 25, 2015 order (i) objecting to the requested mediation and continuance; and (ii) asserting that its right to be heard had been inappropriately limited and that the motion contained material misrepresentations and omissions. [Case No. 14-50155, Docket No. 414]. The motion is signed by Mr. Barto. [Case No. 14-50155, Docket No. 414]. The Court scheduled a hearing on the motion for October 2, 2015. [Case No. 14-50155, unnumbered entry after Docket No. 415].

On October 1, 2015, the Debtor filed its "Notice of Filing of Redlined Debtor's Third Amended Plan of Liquidation." [Case No. 14-50155, Docket No. 424]. The notice is signed by Ms. Luttrell. [Case No. 14-50155, Docket No. 424]. Although the "Summary of the Plan" continued to state that all net revenue would be distributed to the Debtor's equity interest owners, the proposed plan contemplated the creation of a trust that would receive all the Debtor's assets. [Case No. 14-50155, Docket No. 424-1].

The Court convened a hearing on October 2, 2015, to consider the Debtor's motion for reconsideration and several other matters. [Case No. 14-50155, Docket No. 428]. After hearing from the parties, the Court (i) set a confirmation hearing for November 19, 2015; (ii) extended the exclusivity period through the end of the confirmation hearing; (iii) established a schedule for the filing and consideration of a motion to appoint a trustee; and (iv) continued the hearing to consider a lease encumbrance on the Ranches. [Case No. 14-50155, Docket No. 428].

On November 16, 2015, with the consent of all parties, Judge Isgur conducted a mediation in the case. [Case No. 14-50155, Docket No. 473]. Mrs. Hunt attended the mediation with two attorneys.[1] [Docket No. 130, Transcript, pgs. 76-78]. At some unspecified point after a conversation with Judge Isgur, Mrs. Hunt and her counsel were excused from further participation in the mediation. [Docket No. 130, Transcript, pg. 99]. Judge Isgur was subsequently successful in assisting the remaining parties achieve a comprehensive settlement that would form the basis of an amended plan (the "MSA"). [Case No. 14-50155, Docket Nos. 473 and 481-1 (Document entitled "Mediated Settlement Agreement)]. The MSA contained a provision for Mrs. Hunt to opt into the proposed settlement in exchange for certain enumerated consideration. [Case No. 14-50155, Docket No. 481-1]. Despite multiple representations by the Debtor and its professionals to the contrary, it is undisputed that Mrs. Hunt never exercised her option to become a party to the MSA. The MSA also contains a provision that states that Mrs. Hunt will not be impaired under the amended plan. [Case No. 14-50155, Docket No. 481-1]. As Mrs. Hunt elected not to become a party to the MSA, the import of this provision and Mrs. Hunt's standing to complain is suspect.

After receiving notice on November 17, 2015, that a comprehensive settlement had been reached, the Court continued the confirmation hearing to November 20, 2015. [Case No. 14-50155, Docket No. 473].

On November 19, 2015, the Debtor filed a "Revised Third Amended Plan of Liquidation" in redline form. [Case No. 14-50155, Docket No. 476-1]. Mrs. Hunt is listed as a recipient of the

---

[1] During the case, one of these attorneys appeared before the Court without being licensed. [Docket Nos. 61, 64, Docket No. 66, Transcript]. Both attorneys would randomly shadow hearings and make appearances. [Docket Nos. 31, Unnumbered Courtroom minutes after Docket No. 22, Docket No. 130, Transcript, Docket No. 199, Transcript].

plan although the manner of service is not reflected in the certificate of service.   [Case No. 14-50155, Docket No. 476].  The "Summary of the Plan" states as follows:

The following summary of the plan and the Mediated Settlement Agreement is intended as a general description only and does not supersede the terms of the Mediated Settlement Agreement or the operative provisions of this Plan. It is intended that the Debtor's plan shall be a plan of liquidation with all assets and revenue remaining after the payment of allowed third party claims and , costs of administration (including professional fees and U.S. Trustee's fees), and liquidation of insider and related party claims, to be distributed in accordance with the terms and conditions of the Mediated Settlement Agreement dated November 16, 2015to the equity interest owners of the Debtor in proportion to their ownership immediately preceding the Petition date. All parties in interest affected by the Mediated Settlement Agreement were represented at the Mediation or have agreed to its terms. The parties are:

 a. GBG Ranch, Ltd., Debtor-In-Possession;
 b. Guillermo Benavides Garza Investment Company ("GBGIC");
 c. Benavides Family Minerals, Ltd. ("BFM");
 d. GBG Minerals, Ltd. ("Minerals");
 e. GBG Cattle & Hunting, LLC ("C&H");
 f. Quita Wind Energy Company, LLC ("Quita");
 g. Anam, Ltd ("Anam");
 h. Anam Management, LC ("Anam Mgmt";
 i. GM Rentals, Ltd.("GMR");
 j. Beyondo, LLC ("Beyondo");
 k. GGMMRR, LLC ("GGMMRR");
 l. The Residuary Trust u/w of Guillermo Benavides Garza ("Residuary Trust");
 m. Norma Z. Benavides ("Norma");
 n. Guillermo Benavides Z., and his children's trusts including, but not limited to dd and ee below;
 o. Norma Benavides Hunt ("Tutti");
 p. Manuel A. Benavides and his children's trusts, including but not limited to x through cc below;
 q. Anna Claudia Benavides 1991 Trust ("ACB '91 Trust");
 r. Anna Claudia Benavides 1981 Trust ("ACB '81 Trust");
 s. Anna Claudia Benavides 1971 Trust ("ACB '71 Trust")
 t. Guillermo R. Benavides ("Will");
 u. Alfonso F. Benavides ("Alfonso");
 v. Mario M. Benavides ("Mario");
 w. Hillary A. Hunt;
 x. Damiana Augusta Benavides 1996 M Trust;
 y. Adan Manuel Benavides 1996 M Trust;
 z. Lisbeth Amanda Benavides 1996 M Trust;
 aa. Emille Natalia Benavides 1997 C Trust;

<span style="color:red">bb.   Damiana Augusta Benavides 1997 C Trust;</span>
<span style="color:red">cc.   Adan Manuel Benavides 1997 C Trust;</span>
<span style="color:red">dd.   Guillermo Francisco Benavides 1999 C Trust; and</span>
<span style="color:red">ee.   Alejandro Mauricio Benavides 1999 C Trust.</span>

<span style="color:red">(Collectively the "Settlement Parties").</span>

<span style="color:red">The claims and interests asserted by and between the Settlement Parties in their respective capacities in the Bankruptcy Proceeding and in Adversary No. 14-05006 were fully and finally resolved pursuant to the terms and conditions of the Mediated Settlement Agreement as set forth therein.</span>

[Case No. 14-50155, Docket No. 476-1, yellow emphasis added but redline in original]. This summary of the proposed plan and the MSA was false at best. A final version of the proposed plan was filed on November 20, 2015. [Case No. 14-50155, Docket No. 481]. The above-cited language did not change in the final version of the proposed plan. [Case No. 14-50155, Docket No. 481].

On November 19, 2015, Ms. Luttrell and Mr. Barto submitted the "joint" written proffer of the testimony of Guero Benavides and Carlos de Lachica to the Court in support of confirmation of the Debtor's proposed plan. [Case No. 14-50155, Docket No. 477]. The "joint" proffer is signed only by Ms. Luttrell and Mr. Barto and is unusual in other respects. [Case No. 14-50155, Docket No. 477]. In the proffer, it is expressly represented that "[a]ll parties in interest affected by the Mediated Settlement Agreement were represented at the Mediation," including Mrs. Hunt. [Case No. 14-50155, Docket No. 477]. Mrs. Hunt is identified as a settlement party. [Case No. 14-50155, Docket No. 477]. The proffer goes on to state that "[a]ll claims by and between the Benavides entities and family members have been fully and finally resolved pursuant to the terms of the Mediated Settlement Agreement achieved after good faith, arms-length negotiations with the aid of the Mediator." [Case No. 14-50155, Docket No. 477]. The proffer further represents that "all assets of the Debtor will be transferred in accordance with the terms and conditions of the Mediated Settlement Agreement on the Effective Date." [Case No. 14-50155, Docket No. 477]. Finally, Guero Benavides stated that "the consummation of the Third Amended Plan of Liquidation will be performed by himself" in his various capacities. [Case No. 14-50155, Docket No. 477].

At the end of the proffer, Ms. Luttrell certified that Mrs. Hunt had been served with the proffer on November 19, 2015 "pursuant to the ECMF filing and notice procedures or in the manner indicated." (errors included) [Case No. 14-50155, Docket No. 477]. Mrs. Hunt was not a party served by CM/ECF nor is there any indication of how service on her was accomplished. The Court finds the representations in the proffer made by both Guero Benavides and Ms. Luttrell to have been false when made.

On the afternoon of November 19, 2015, Mr. Barto, acting at the instruction of Ms. Luttrell, drove Mr. de Lachica to Mrs. Hunt's home to deliver a package purportedly containing a copy of the final version of the proposed plan, the MSA and other documents. [Docket No. 457, Transcript at pgs. 84-93]. The record is unclear as to exactly what documents were included in the delivery to Mrs. Hunt. [Docket No. 457, Transcript at pgs. 90-96]. Mr. Barto's testimony on these issues

was unhelpful at best and demonstrated a troubling lack of knowledge in his capacity as the Debtor's general bankruptcy counsel. [Docket No. 457, Transcript at pgs. 93-97]. It is also puzzling to the Court that Mr. Barto would put himself in the position of becoming a witness regarding a fact that the parties obviously knew could become a critical issue.

On November 20, 2015, the Court convened a hearing to consider confirmation of the Debtor's proposed plan. [Case No. 14-50155, Docket No. 482]. Based on the representations of Ms. Luttrell and the uncontested proffers of Messrs. Guero Benavides and Mr. de Lachica, the Court confirmed the Debtor's Third Amended Plan of Liquidation. [Case No. 14-50155, Docket No. 483].

On December 4, 2015, Ms. Luttrell certified that she served a copy of the Court's confirmation order on Mrs. Hunt by regular mail. [Case No. 14-50155, Docket No. 496]. Ms. Luttrell also served a "Notice of Effective Date" of the confirmed plan the same day. [Case No. 14-50155, Docket No. 497]. Ms. Luttrell's explanation for the delay in serving the confirmation order was that her office was busy, and that Thanksgiving occurred. [Case No. 14-50155, Docket No. 585, Transcript, pgs. 288-97]. It is notable that December 4, 2015, was the last day to appeal the Court's confirmation order. The Court does not accept Ms. Luttrell's explanation. By serving a copy of the confirmation order on December 4, 2015, by regular mail, Ms. Luttrell intentionally eviscerated Mrs. Hunt's right to seek appellate review of the Court's decision. Further, in the Notice of the Effective Date, Ms. Luttrell certified that Mrs. Hunt was served by CM/ECF and electronic mail. [Case No. 14-50155, Docket No. 497]. CM/ECF service was not available to Mrs. Hunt nor was any e-mail address identified. [Case No. 14-50155, Docket No. 497]. The Court cannot conclude that Mrs. Hunt was ever served with the Notice of the Effective Date.

On December 15, 2015, the Debtor, Guero Benavides, Memo Benavides and Quita Wind filed their joint agreed motion to approve a form of release pursuant to the MSA. [Case No. 14-50155, Docket No. 507]. Mr. Valls signed the motion on behalf of Quita Wind. Ms. Luttrell signed the motion as special counsel for the Debtor. [Case No. 14-50155, Docket No. 507]. The motion was not served on Mrs. Hunt. [Case No. 14-50155, Docket No. 507]. The form of release, however, includes Mrs. Hunt as a "Releasing Party." [Case No. 14-50155, Docket No. 507-2]. At trial, no legitimate explanation was ever provided for the inclusion of Mrs. Hunt as a Releasing Party in this document or why she was not provided a copy of the moton. In the absence of an objection, the Court approved the motion by order entered December 23, 2015. [Case No. 14-50155, Docket No. 516].

On December 29, 2015, the Debtor filed a motion seeking the closure of the Debtor's bankruptcy case. [Case No. 14-50155, Docket No. 519]. The motion is signed by Ms. Luttrell. [Case No. 14-50155, Docket No. 519]. In the motion, Ms. Luttrell represents that the debtor is in "compliance with all terms of the Plan." [Case No. 14-50155, Docket No. 519]. This statement was false when made as set forth below. Interestingly, this particular motion specifically notes that Mrs. Hunt was served by United States Mail. [Case No. 14-50155, Docket No. 519]. Based on the representation by counsel, the Court entered a final decree and closed the bankruptcy case on December 30, 2015. [Case No. 14-50155, Docket No. 520].

### Partial Implementation of the Confirmed Plan

On December 4, 2015, Ms. Luttrell reserved the name "Oilton 26, LLC" with the Texas Secretary of State. [Hunt Exhibit 99a]. On December 16, 2015, Ms. Luttrell filed a certificate of formation for Oilton 26, Ltd. with the Texas Secretary of State. [Hunt Exhibit 99b].

At about the same time, Ms. Luttrell approached Richard Schmidt as the contemplated future trustee of the Residuary Trust about Guero Benavides and Memo Benavides purchasing the Residuary Trust's interest in the Oilton and Corazon Ranches. [Hunt Exhibit 41]. Mr. Schmidt testified that he told Ms. Luttrell that he would not approve such a transaction and that if an agreement already existed, it needed to be accomplished prior to his becoming the trustee. [Case No. 14-50155, Docket No. 581, Transcript, pgs. 204-08].[2]

On December 16, 2015, Guero Benavides sent a letter to his mother, Norma Benavides, in her capacity as the trustee for the Residuary Trust offering to buy the Residuary Trust's to be issued 20% limited partnership interest[3] in Oilton 26, Ltd. [Hunt Exhibit 87b]. At the time, Norma Benavides was approximately 89 years old and in questionable health. The letter states that it is being sent pursuant to the MSA, the third amended plan and the Court's confirmation order. [Hunt Exhibit 87b]. The Court finds this statement to be false and made solely for the purpose of misleading the reader of the offer letter. The offer letter was prepared by Ms. Luttrell. [Case No. 14-50155, Docket No. 581, Transcript, pg. 269]. At the time the letter was prepared, Ms. Luttrell initially testified that she was representing the Debtor. [Case No. 14-50155, Docket No. 585, Transcript, pg. 166]. When presented with conflicting evidence, Ms. Luttrell testified that she was representing Guero Benavides. [Case No. 14-50155, Docket No. 585, Transcript, pg. 175].[4] The proposed purchase price was based on two appraisals of the Oilton Ranch less a 38% discount for an alleged burden created by the Quita Wind lease. [Hunt Exhibit 87b]. The offer failed to contemplate that the Residuary Trust held a 20% interest in Quita Wind. [Def. Exhibit 12].

In a coordinated effort, Memo Benavides also sent a letter on December 16, 2015, to his mother, Norma Benavides, in her capacity as the trustee for the Residuary Trust, offering to buy the Residuary Trust's 20% interest in the Corazon Ranch. [Hunt Exhibit 87a]. The letter states that it is being sent pursuant to the MSA, the third amended plan and the Court's confirmation order. [Hunt Exhibit 87a]. The Court likewise finds this statement to be false and made solely for the purpose of misleading the reader of the offer letter. Mr. Valls prepared the offer letter. [Case No. 14-50155, Docket No. 581, Transcript, pg. 269]. The proposed purchase price was based on

---

[2]  To be clear, the Court finds Mr. Schmidt's conduct throughout this case to have been exemplary and in accordance with the highest standards of ethics and professionalism.

[3]  In contrast to the direct 20% undivided interest in the Oilton Ranch contemplated in the MSA, the plan and the Court's confirmation order. Ms. Luttrell's and Mr. Barto's demonstration in this proceeding that they did not understand the legal concept of an undivided property interest is distressing. [Case No. 14-50155, Docket No. 585, Transcript, pgs. 50-55, 70-73, Docket No. 457, Transcript at pgs. 102-13].

[4]  Ms. Luttrell's testimony in this proceeding was evasive, conflicting and wholly lacking in the transparency that the Court requires of all professionals that appear before the bar. The Court finds Ms. Luttrell's testimony wholly lacking in credibility and her conduct inappropriate.

an appraisal applying a discount due to the Quita Wind lease. [Hunt Exhibit 87a]. Mr. Valls did not provide a copy of the appraisal to Norma Benavides. [Case No. 14-50155, Docket No. 581, Transcript, pg. 289]. Moreover, at the time of the letter, Mr. Valls knew that the Quita Wind lease had been terminated by the confirmed plan and the MSA. [Case No. 14-50155, Docket No. 581, Transcript, pgs. 291-93]. Mr. Valls and Ms. Luttrell synchronized their actions to ensure that the two offers appeared as "similar as possible." [Case No. 14-50155, Docket No. 581, Transcript, pgs. 269-73, Hunt Exhibit 301]. The Court finds that Mr. Valls and Ms. Luttrell knowingly and intentionally assisted Memo Benavides and Guero Benavides in a coordinated effort to defraud the Residuary Trust and ultimately, Mrs. Hunt.[5] When questioned by the Court, Mr. Valls' attempted explanation of his conduct defied common sense. [Case No. 14-50155, Docket No. 581, Transcript, pgs. 290-93]. Ms. Luttrell testified that she was aware of the misleading nature of the content of Mr. Valls' letter and took no action. [Case No. 14-50155, Docket No. 585, Transcript, pgs. 142-43].

Ms. Luttrell presented the two "offers" to Norma Benavides. [Case No. 14-50155, Docket No. 581, Transcript, pgs. 301-02, Hunt Exhibit 301, Case No. 14-50155, Docket No. 585, Transcript, pgs. 187-94]. Ms. Luttrell disputes that she presented the offers to Norman Benavides and asserts that Mr. de Lachica presented the offers. [Case No. 14-50155, Docket No. 585, Transcript, pg. 139]. Whether directly or indirectly through Mr. de Lachica, Ms. Luttrell controlled the presentation of two misleading offers to Norma Benavides under the pretense of being made pursuant to the MSA, the confirmed plan and the Court's confirmation order. [Case No. 14-50155, Docket No. 585, Transcript, pgs. 158-161]. Both offers were accepted by Norma Benavides on behalf of the Residuary Trust without change or negotiation. [Hunt Exhibit 88a].

On December 28, 2015, Ms. Luttrell filed a "Notice of Resignation of Trustees and Request for Entry of Order in Aid of Confirmation Acknowledging Acceptance of Richard Schmidt as Trustee." [Case No. 14-50155, Docket No. 517]. The notice represents that (i) Guero Benavides and Memo Benavides resigned as trustees of the Residuary Trust on December 7, 2015; (ii) Norma Benavides resigned as the remaining trustee of the Residuary Trust on December 28, 2015; and (iii) Richard Schmidt became the successor trustee of the Residuary Trust on or about December 30, 2015. [Case No. 14-50155, Docket No. 517].

On December 31, 2015, the Debtor conveyed the Oilton Ranch to Oilton 26, Ltd. by general warranty deed. [Hunt Exhibit 90b]. The deed reflects that the transfer is being made pursuant to and in accordance with the terms of the confirmed plan. [Hunt Exhibit 90b]. Likewise, the Torrecillas wind sublease was assigned to Oilton 26, Ltd. on December 31, 2015. [Hunt Exhibit 132].

---

[5] Ms. Luttrell testified that before the offers were made, she already knew what the requirements were for Norma Benavides to accept them. [Case No. 14-50155, Docket No. 585, Transcript, pgs. 175-80]. Accepting this testimony as true, the Court can only conclude that the actions of Mr. Valls and Ms. Luttrell were an elaborate ruse intended solely to defraud Mrs. Hunt using the bankruptcy confirmation process to cloak their illicit actions.

### The Litigation

On March 11, 2016, Mrs. Hunt filed her motion to reopen the bankruptcy case (the "Motion to Reopen"). [Case No. 14-50155, Docket No. 534]. The Motion to Reopen was subsequently amended multiple times. [Case No. 14-50155, Docket Nos. 535, 536 and 537]. In the last iteration, Mrs. Hunt (i) alleged that she was wrongfully listed as a "settlement party" in the Plan, (ii) requested relief from certain releases granted in the Plan; and (iii) asked that she be exempt from the Plan's gatekeeper provision. [Case No. 14-50155, Docket No. 537]. By agreed order entered May 12, 2016, the Court reopened the bankruptcy case. [Case No. 14-50155, Docket No. 547].

During an August 19, 2016, hearing in the main bankruptcy proceeding, the Court converted the remainder of Mrs. Hunt's requested relief in the Motion to Reopen to an adversary proceeding due to its concerns regarding the impact of Bankruptcy Rule 7001. [Case No. 14-50155, Docket Nos. 559 and 560]. In addition, the parties stipulated that Mrs. Hunt was not a "settlement party" as represented in the Plan. [Case No. 14-50155, Docket No. 561]. The Court approved the stipulation by Order entered March 8, 2017. [Case No. 14-50155, Docket No. 567].

On August 24, 2016, Mrs. Hunt filed her "First Amended Complaint for Declaratory Relief" (the "Complaint") against the Debtor, the estate of Norma Z. Benavides (the "NZB Estate"), Memo Benavides and Guero Benavides. [Docket No. 5]. In the Complaint, Mrs. Hunt sought a declaration that:

> the Confirmation Order and the Plan terms and Permanent Mandatory Injunction that purport to, or in fact do, impose restriction or enjoin or otherwise impair a non-debtor Plaintiff's *personal* rights and *in rem* claims against the non-debtor Target Parties, are void and [un]enforceable as exceeding this Court's jurisdiction, as unconstitutional prior restraints, as improper "obey the law" injunctions, and as vague in violation of Rule 7065(d), Bankruptcy Rules of Procedure ("BRP").

[Docket No. 5, para. 52]. Mrs. Hunt further asserted that the Court's confirmation order and the plan violated her constitutional rights under the First, Fifth and Fourteenth Amendments. [Docket No. 5, para. 53]. In the request for relief, Mrs. Hunt requested that she be released from all restrictions imposed under the plan and confirmation order. [Docket No. 5, pgs. 17-18]. The Debtor and Guero Benavides filed their answer on September 16, 2016. [Docket No. 19]. Mr. Barto signed the answer on behalf of the Debtor and Guero Benavides. [Docket No. 19]. The NZB Estate filed its answer and affirmative defenses the same day. [Docket No. 18]. Ms. Luttrell signed the answer on behalf of the NZB Estate. [Docket No. 18].

On August 31, 2016, the Debtor, Guero Benavides, Memo Benavides and the NZB Estate filed their joint motion for a more definitive statement. [Docket No. 7]. Mrs. Hunt filed her response on September 14, 2016. [Docket No. 15]. After a hearing on September 23, 2016, the Court denied the motion. [Unnumbered Minute Entry after Docket No. 22 and Docket No. 24]. The Court also approved an agreed order permitting Mrs. Hunt to file claims in the NZB Estate probate proceeding, subject to a later determination of whether the asserted claims were direct or derivative. [Docket No. 23]. Mrs. Hunt filed her petition in the NZB Estate probate proceeding on September 30, 2016. [Docket No. 34-16].

The defendants filed their amended answers to Mrs. Hunt's complaint on October 24, 2016 [Docket Nos 33, 37, 39]. The defendants also filed counterclaims against Mrs. Hunt seeking declaratory relief that: (i) the Court's gatekeeper provision was valid and enforceable against Mrs. Hunt, and (ii) that all claims asserted by Mrs. Hunt against any of the Residuary Trust trustees were derivative and released by the Plan and Order [Docket Nos, 34, 41, 42]. In addition, the defendants filed a third-party complaint against Richard Schmidt, seeking both indemnification and injunctive relief to prevent a distribution under the ACB 91 Trust to Mrs. Hunt. [Docket Nos 35, 38, 40].

On November 14, 2016, Mrs. Hunt filed her "Responses and Motions to Dissolve the Plan and Confirmation Order Injunction and Motion Dismiss and Regarding Original Counterclaims of the Estate of Norma Z. Benavides, Guillermo Benavides, G.B.G. Ranch, Ltd. and Manuel A. Benavides" (the "Dissolution Motion"). [Docket No. 54]. On the following day, Mrs. Hunt filed her "Motion to Strike or Dismiss Third Party Complaints and to Dissolve Permanent Injunction for Lack of Jurisdiction." [Docket No. 55]. The motions assert that the Court lacked personal and subject matter jurisdiction to: (i) determine the counterclaims against the defendants and the third-party claims against Richard Schmidt and (ii) impose the confirmation order's gatekeeper provision against Mrs. Hunt. [Docket Nos. 54 and 55].

On November 21, 2016, Richard Schmidt filed his answer to the defendants' third-party complaint and asserted a counterclaim for interpleader. [Docket Nos. 57, 58, 59]. On December 1, 2016, Mrs. Hunt filed her motion to dismiss the interpleader claims for lack of subject matter jurisdiction. [Docket No. 62]. Mrs. Hunt filed her amended motion to strike on December 2, 2016. [Docket No. 63].

On January 13, 2017, the defendants filed their responses to the Dissolution Motion. [Docket Nos. 70, 71, 72]. Mrs. Hunt filed an omnibus reply on February 3, 2017. [Docket No. 76].

On February 8, 2017, the Court convened a hearing to discuss scheduling with respect to the pending motions. [Docket No. 80]. During the hearing and with the consent of the parties, the Court bifurcated the proceedings to first address the subject matter jurisdiction issues raised by Mrs. Hunt. [Docket No. 80]. The parties stipulated to the abatement of the interpleader claims and that no distributions from any of the relevant trusts would be made pending a final determination by the Court. [Docket No. 84]. Additional responses and replies were filed on March 8, 2017, and March 22, 2017, respectively. [Docket Nos. 90, 91, 92, 93 and 94].

Beginning April 18, 2017, the Court conducted an evidentiary hearing spanning four days on the scope of its subject matter jurisdiction. [Docket Nos. 116, 122, 143 and 150]. During closing arguments, the parties agreed that the Court should limit its ruling to Mrs. Hunt's jurisdictional challenge to the Court's ability to implement the gatekeeper provision. [Docket No. 152, Transcript]. The Court announced its findings of fact and conclusions of law on the record pursuant to Fed. R. Bankr. P. 7052 and denied Mrs. Hunt's motion. [Docket Nos. 152, Transcript and 169]. The Court also entered orders clarifying the scope of the Court's retained jurisdiction and the gatekeeper provision in the confirmation order. [Docket Nos. 167 and 170]. Mrs. Hunt appealed each of the Court's orders. [Docket Nos. 173 and 175].

In accordance with the gatekeeper provision, Mrs. Hunt submitted her proposed state court petition on July 24, 2017, to the Court for review. [Docket No. 166-1]. After a hearing on August 18, 2017, the Court authorized Mrs. Hunt to assert direct claims in the NZB Estate probate proceeding for (i) statutory accounting; and (ii) breaches of fiduciary duty for which she suffered direct harm and which were not resolved by the Court. [Docket No. 190]. The Court also transferred the third-party claims asserted by the NZB Estate, Guero Benavides and Memo Benavides against Richard Schmidt to the NZB Estate probate proceeding. [Docket No. 190]. The Court amended its order on September 11, 2017, and again on September 21, 2017. [Docket Nos. 194 and 199]. Mrs. Hunt filed her appeal of the Court's orders on October 4, 2017. [Docket No. 203].

On August 25, 2017, Mrs. Hunt requested that the Court rule on her remaining jurisdictional challenges that were previously abated by agreement. [Docket No. 186]. After a hearing conducted on December 13, 2017, the Court denied Mrs. Hunt's remaining jurisdictional challenges by order entered February 12, 2018. [Docket No. 219]. On February 26, 2018, Mrs. Hunt filed her notice of appeal and request for certification of direct appeal to the Fifth Circuit Court of Appeals. [Docket Nos. 223 and 224].

During a hearing on May 30, 2018, to discuss the status of the various appeals, the Court afforded the parties an opportunity to amend their substantive pleadings. [Docket No. 250]. Accordingly, Mrs. Hunt filed her second amended complaint requesting that the confirmation order be vacated under 11 U.S.C. § 1144 and FED. R. CIV. P. 60 on June 14, 2018. [Docket No. 257]. The defendants filed their second amended answers and counterclaims on July 10, 2018. [Docket Nos. 258, 259, 260, 261, 262 and 263]. Mrs. Hunt filed a response, a renewed request for Rule 12 relief, and a reservation of rights with respect to the counterclaims on July 31, 2018. [Docket No. 265]. All requests for Rule 12 relief were denied by order entered August 29, 2018. [Docket No. 273]. Mrs. Hunt filed answers to the counterclaims on August 29, 2018. [Docket Nos. 269, 270 and 271].

On September 19, 2018, Memo Benavides and Guero Benavides filed their motion to strike Mrs. Hunt's answers. [Docket Nos. 275 and 277]. Mrs. Hunt filed her response and request for leave to amend her answers on September 25, 2018. [Docket No. 279]. By order entered October 24, 2018, the Court granted Mrs. Hunt's request to amend her answers. [Docket No. 293].

During a hearing on August 16, 2019, to resolve several outstanding disputes, the parties agreed that the sole issue for trial would be Mrs. Hunt's requests for relief under 11 U.S.C. § 1144 and FED. R. CIV. P. 60. [Docket No. 411].

On August 27, 2019, Mrs. Hunt and Memo Benavides filed a joint stipulation dismissing all claims against the other with prejudice pursuant to the terms of a comprehensive settlement. [Docket No. 431]. Nothing in this opinion shall disturb that settlement.

## The Trial

The Court commenced a trial on August 28, 2019. [Docket No. 435]. At the conclusion of opening statements, the parties agreed to a temporary adjournment to participate in settlement negotiations with Mr. Hoffman serving as the facilitator. [Docket No. 434]. The parties were

unable to reach a consensus and the trial resumed on August 30, 2019, and then continued to November 6, 2019.  [Docket Nos. 438 and 454].  During the morning of November 6, 2019, one of the participating attorneys became ill and the Court continued the trial.  [Docket No. 454]. Shortly thereafter, COVID-19 containment measures prohibited further in-person proceedings.

The Court held video status conferences on July 17, 2020, August 14, 2020, and September 16, 2020.  [Docket Nos. 472, 476 and 478].  During the September 16, 2020, status conference, the Court set a continued trial date for January 19, 2021.  [Docket No. 478].  The resurgence of COVID-19 and continued safety measures, however, necessitated further delays.  The Court held additional status conferences on April 16, 2021, and April 29, 2021, to discuss the parties' available options.  [Docket No. 486 and unnumbered entry after Docket No. 490].  At the April 29, 2021, status conference, the parties agreed to a hybrid live/video approach and the Court set a continued trial date of May 3, 2021.  [Unnumbered entry after Docket No. 490].  After an additional eight days of trial, the Court closed the evidence on December 2, 2021.  [Docket No. 527].  The Defendants' motion for judgment on partial findings pursuant to FED. R. CIV. P. 52(c) was carried by the Court.

During the trial, the Court heard testimony from fourteen witnesses including Carl Barto, Guero Benavides, Leslie Luttrell, Joshua Wolfshohl, Richard Schmidt, Kenneth Valls, John Heymann, Carlos de Lachica, Patricia Tomasco, Mrs. Hunt, Jim Hoffman, Carl Kolb, Robert Guerro and Dr. Blanca Azios.  Of these witnesses, seven (Barto, Luttrell, Valls, Heymann, Tomasco, Hoffman and Kolb) were legal professionals participating in the case to some extent and biased.  The Court places special emphasis on the testimony of Ms. Luttrell and Mr. Valls.  The Court finds both witnesses to be non-credible.  The Court likewise finds Mrs. Hunt's testimony, motivated by a lifetime of anger and perceived discrimination, non-credible.  With respect to Guero Benavides, the Court finds Mr. Benavides to be a generally dishonest person with no respect for the oath and whose testimony must be corroborated at every instance.  The lack of relevant, reliable testimony in this proceeding has left the Court in a difficult position.

By agreement of the parties, the Court allotted 10 hours per side for closing arguments to begin on March 8, 2021, and to conclude on March 9, 2021.  [Unnumbered entry after Docket No. 535].  At the conclusion of closing arguments, the Court took the case under advisement and set deadlines for the submission of post-trial briefs and an agreed final exhibit list.  [Unnumbered entry after Docket No. 538].

Mrs. Hunt filed her brief on April 6, 2022.  [Docket No. 544].  In her brief, Mrs. Hunt cited the following acts taken by the Court in reliance on alleged fraudulent conduct by Guero Benavides and professionals acting at his direction:

- at the request of Guero, confirm a fraudulent Plan of Liquidation [Ex. 27; Dkt. 481];

- at the request of Guero, enter an order confirming that plan which itself contains misstatements [Ex. 38; Dkt. 483];

- at the request of Guero [Dkt. 507] enter an order approving the form of releases by which Guero and his brother Guillermo Benavides Z ("*Memo*") with the help of Guero's employee, Carlos De la Chica ("*De la Chica*") falsely advised this Court that Mrs. Hunt was a Settlement Party which release was filed of record in the Webb County Clerk's office [Ex. 67; Dkt. 516]; and

- at the request of Guero [Dkt. 519] sign a Final Decree [Dkt. 520] declaring that the Plan had been Substantially Consummated when Guero and his Team knew that Substantial Consummation had not and could not occur in part because Guero had abused and taken advantage of his dying 89-year mother, Norma Benavides Z ("NZB"), and done so in such a manner that Substantial Consummation is now impossible to obtain.

[Docket No. 544].  Based on the foregoing alleged fraudulent acts that resulted in a tainted confirmation order, Mrs. Hunt requested, however, that the confirmation order not be vacated but that the Court remove Guero Benavides and his children's trusts from all ownership interests in the Hill Ranch.  [Docket No. 544].  In the alternative, Mrs. Hunt requested her 50% share of all assets to which the Residuary Trust was entitled.  [Docket No. 544].

The Debtor and Guero Benavides filed their brief on May 4, 2022.  [Docket No. 557].  In their brief, the Debtor and Guero Benavides (i) asserted that 11 U.S.C. § 1144 was the sole method to vacate a confirmation order; (ii) challenged the Court's authority to grant Mrs. Hunt's requested relief; (iii) asserted that substantial confirmation prevented the Court from modifying the plan; and (iv) argued that any fraud occurred post-confirmation thereby rendering 11 U.S.C. § 1144 inapplicable.  [Docket No. 557].  Mrs. Hunt filed her reply brief on May 16, 2022. [Docket No. 558].

## Jurisdiction and Authority

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L) and (O).  Further, the Court has inherent authority to enforce its own orders.  The Court has constitutional authority to enter a final order in this contested matter.  *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011).  To the extent necessary, the parties have impliedly consented to the entry of a final order by the Court. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947–48 (2015) (holding that a party impliedly consents to adjudication when the party "voluntarily appear[s] to try the case" with knowledge of the need for consent and without affirmatively refusing to provide it).

## Analysis

Section 1144 of the Bankruptcy Code provides that a party may seek the revocation of a confirmation order within 180 days of its entry "if and only if such order was procured by fraud."  The use of the term "fraud" in § 1144 incorporates each of the traditional elements of fraud. *In re*

*Sherwin Alumina Co., LLC*, 952 F.3d 229, 235 (5th Cir. 2020).  Accordingly, Mrs. Hunt must establish that (1) the debtor or plan proponent made a materially false representation or omission to the court; (2) the representation was made with knowledge of its falsity or reckless disregard for the truth; (3) the representation was made to induce the court's reliance; (4) the court actually relied upon the representation; and (5) court entered the confirmation order in reliance on the representation.  *Id*.  Section 1144 is the exclusive means by which to vacate a confirmation order.  *In re Logan Place Props., Ltd.*, 327 B.R. 811, 812 (Bankr. S.D. Tex. 2005).  As set forth above, the evidence adduced in this case regarding the conduct by Guero Benavides and Ms. Luttrell as the Debtor's representatives supports a finding of each of the required elements.

In her briefing and at closing argument, Mrs. Hunt requests that the Court not revoke the confirmation order, but to modify the terms of the confirmed plan by reallocating certain real property interests to her.  In effect, Mrs. Hunt seeks to implement a plan modification based on the conduct of Guero Benavides.  Section 1127 of the Bankruptcy Code addresses plan modifications.  11 U.S.C. § 1127, *In re Logan Place Props., Ltd.*, 327 B.R. 811, 813-14 (Bankr. S.D. Tex. 2005) (holding that § 1127 provides the exclusive mechanism to modify a plan).  After confirmation, however, only the plan proponent or the reorganized debtor may seek to modify the plan.  11 U.S.C. § 1127(b).  To the extent that Mrs. Hunt seeks relief under § 105, the Court may not alter an express right provided for under the Bankruptcy Code using its equitable power under § 105.  *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *In re Sadkin*, 36 F.3d 473 (5th Cir. 1994); *In re Logan Place Props., Ltd.*, 327 B.R. 811, 814 fn.2 (Bankr. S.D. Tex. 2005).

By altering her requested relief to request a modification of the confirmed plan, Mrs. Hunt implicitly requests the Court to enforce the confirmed plan.  It is indisputable that the Court has the inherent authority to interpret and enforce its confirmation orders.  *See In re Nat'l Gypsum Co.,* 118 F.3d 1056, 1064 (5th Cir. 1997); *In re Forty–Eight Insulations, Inc.,* 212 B.R. 938, 941 (Bankr. N.D. Ill. 1997).  Many of the actions taken by Guero Benavides about which Mrs. Hunt complains were specifically stated to have been taken pursuant to the plan and the Court's confirmation order.  Guero Benavides explicitly testified that "the consummation of the Third Amended Plan of Liquidation will be performed by himself."  [Case No. 14-50155, Docket No. 477].  An appropriate sanction for failing to comply with a confirmed plan is the award of an affected party's attorney's fees.  *In re Berry*, 582 B.R. 886, 892-93 (Bankr. D.S.C. 2018).

The Plan contemplated that the Residuary Trust would have a 20% undivided interest in certain property, including the Oilton Ranch.[6]  [Hunt Exhibit 27; Docket 481, pg. 22].  The efforts by Guero Benavides (the Plan's implementer), Ms. Luttrell (the Plan's drafter) and Mr. Valls (an advocate of the Plan and a co-conspirator) to defraud the Residuary Trust of its interest under the guise of confirming a false plan and taking "actions taken pursuant to the plan and confirmation order" constitute a fraud on the court in violation of multiple ethical and legal duties by counsel.  The transfer of the Residuary Trust's interests to Guero Benavides, his children and his affiliates/trusts is voided as inconsistent with the confirmed plan.  The plan's stated intent will be

---

[6]   The confirmed plan also contemplates that the Residuary Trust would receive a 20% undivided interest in the Corazon Ranch.  The Court understands that this issue was resolved with the comprehensive settlement reach between Mrs. Hunt and Memo Benavides.

fulfilled, and the Residuary Trust will receive all property interests contemplated under the MSA, the plan and the confirmation order. As a beneficiary of the Residuary Trust, Mrs. Hunt will receive whatever she is entitled to receive under applicable state law.

The Plan further contains certain releases and exculpations. The Court finds that the Debtor and certain of its professionals deliberately violated Mrs. Hunt's due process rights by depriving her of adequate notice of multiple proceedings that affected her property rights. As such, the Court finds that any release or exculpation provided to any non-debtor party in any capacity under the Plan is not binding on Mrs. Hunt.

The Court further awards Mrs. Hunt her reasonable attorney's fees to be paid by Guero Benavides as the party responsible for implementing the Plan but intentionally failing to do so. Within 30 days of the entry date of this memorandum opinion, counsel for Mrs. Hunt shall file an itemized request setting forth her requested attorney's fees and expenses. The failure to timely file the required itemization shall constitute a waiver of any right to attorneys' fees and costs. Guero Benavides shall have 14 days from the filing date of the itemization to object to the requested attorneys' fees and expenses. Any objection by Guero Benavides must specifically identify the time entry or expense objected to and the basis of the objection. Any specific fee request or expense to which no objection is filed is allowed. Any general objection or objection that fails to comply with this paragraph is waived. Once the amount of attorney's fees is calculated, Mrs. Hunt shall receive a money judgment subject to execution in the calculated amount.

The motion for judgment on partial findings pursuant to FED. R. BANKR. P. 52(c) is denied.

## Further Proceedings

The Court directs the parties to (i) initiate the procedure for the calculation and award of attorney's fees and costs as set forth above; and (ii) prepare and submit a proposed judgment implementing the Court's rulings. The submission of a proposed form of judgment does not waive or relinquish any party's right to seek review or appeal of the Court's decision. Should the parties be unable to reach an agreement on the applicable calculations or form of judgment, the parties should jointly contact the Court's case manager and obtain a hearing date to resolve any outstanding issues. Proposed forms of judgment should be filed seven days prior to the scheduled hearing.

The parties should also contact the Court's case manager to obtain a mutually convenient setting for a status conference to discuss further proceedings.

**SIGNED: December 4, 2022.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**