United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 06, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 14-50155 |
| GBG RANCH, LTD, A TEXAS LIMITED PARTNERSHIP, | § § | CHAPTER 11 |
| | § | |
| Debtor. | § § | |
| NORMA BENAVIDEZ-HUNT, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | ADVERSARY NO. 16-5005 |
| G.B.G. RANCH, LTD. THE ESTATE OF NORMA Z. BENAVIDES GUILLERMO BENAVIDES Z MANUAL A. BENAVIDES CARL MICHAEL BARTO, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER ON ATTORNEY'S FEES

After a ruling in Plaintiffs' favor, Judge David R. Jones also awarded the plaintiff, Norma Benavidez-Hunt ("Ms. Hunt") her reasonable attorney's fees in the Memorandum Opinion entered on December 4, 2022, and gave Ms. Hunt's counsel 30 days to "file an itemized request setting forth her requested attorney's fees and expenses." As the fees were to be paid individually by Manuel A. Benavides a/k/a Guero Benavides ("Guero Benavides"), one of the defendants in this case, Judge Jones gave Guero Benavides 14 days after the filing of the itemized request to object to the requested attorney's fees and expenses. After a hearing held on August 17, 2023, Judge Jones ruled on the record that Ms. Hunt was awarded $2,393,009.35 in attorneys' fees and expenses. Based on the record, a written judgment was entered on December 5, 2023, by Judge Jeffrey P. Norman, the successor judge. After appeal, the issue regarding the calculation of the amount of reasonable attorneys' fees was remanded by the District Court.

## FACTUAL AND PROCEDURAL BACKGROUND

This adversary was filed on August 16, 2016. After years of litigation, interim judgments,[1] and a trial over three and one-half years[2] on all remaining issues starting on August 28, 2019, continuing on August 30, 2019, November 6, 2019, May 3, 2021, May 4, 2021, through May 7, 2021, and November 30, 2021, through December 2, 2021. Closing arguments were heard on March 8, 2022, through March 9, 2022. Judge Jones issued a Memorandum Opinion on December 4, 2022,[3] which found fraud on the court, voided a transfer of the Residuary Trust's interest to Guero Benavides, his children and his affiliates/trust and that any release or exculpation provided to any non-debtor parry under the confirmed plan is not binding on Ms. Hunt. The Memorandum Opinion also awarded Ms. Hunt "reasonable attorney's fees to be paid by Guero Benavides as the party responsible for implementing the Plan but intentionally failing to do so." The Opinion further allowed Ms. Hunt to file an "itemized request setting forth her requested attorney's fees and expenses" within 30 days. Guero Benavides would have 14 days from the filing of the itemization to object to the requested fees and expenses. The Memorandum Opinion admonished Guero Benavides that he must "specifically identify the time entry or expense objected to and the basis of the objection. Any specific fee request or expense to which no objection is filed is allowed. Any general objection or objection that fails to comply with this paragraph is waived."

Counsel for Ms. Hunt filed their Motion for the Award of Attorneys' Fees on January 3, 2023[4] requesting a total amount of $2,579,023.70 in fees and expenses from February 19, 2016, through November 28, 2022. An Amended Response and Objection to Plaintiff's Motion for Award of Attorney's fees was filed by G.B.G. Ranch, Ltd. and Guero Benavides on January 27, 2023.[5] Ms. Hunt filed a reply to the response on February 10, 2023.[6]

Two firms represented Ms. Hunt throughout this case. Jordan & Ortiz, P.C. (the "Jordan Firm") was her original counsel, and they stated that they expended over 4,831.50 hours. Ms. Hunt then retained the Broocks Law Firm ("Broocks Firm") in May of 2017 to assist Jordan & Ortiz, P.C., and the Broocks Firm billed over 3,792 hours. Both firms testified that they each

---

[1] ECF No. 370, Order Granting Summary Judgment for the Estate of Norma Z. Benavides
[2] The lengthy time period was caused in part by the COVID 19 pandemic shutting down personal appearances in the courts in March of 2020. *See* General Order 2020-4 entered on March 9, 2020.
[3] ECF No. 561.
[4] ECF No. 563.
[5] ECF No. 568.
[6] ECF No. 569.

granted discounts and did not charge the full extent of their fees. Shelby Jordan explained in his Declaration[7] that the Jordan Firm incurred gross hourly fees of $1,497,275.00 and expenses of $169,224.82, but that the firm wrote off $158,036.59, resulting in a request of $1,339,608.60[8] in fees and expenses of $197,597.63[9] for a total of $1,537,188.23. Attached to Mr. Jordan's Declaration are 277 pages of entries for fees and expenses set forth in monthly invoices from February 19, 2016 to December 2022.

Ben C. Broocks filed his Declaration on behalf of the Broocks Firm stating that it expended approximately 3,792 hours and requested $1,012,951.30 in fees and $28,884.17 in expenses totaling $1,041.835.47. His Declaration is accompanied with 146 pages of billing entries beginning on May 8, 2017, through April 6, 2022.

The Defendants filed a response on January 27, 2023,[10] ("Defendants' Objection") stating that they are aware that the Court required specific objections to time entries, but they were unable to comply as the time entries were "block-billed and not discerned by category, claim or defendant."[11] They also objected to fees related to litigation involving Guillermo Benavides Benavidez ("Memo Benavidez"), stated that the requested fees were excessive, citing to their much lower fees, and advised that a reasonable total fee "should not have exceeded $1.5 million." Lastly, they objected to fees billed due to time spent on unsuccessful appeals, multiple parties billing for the same work, and for work related to a separate probate proceeding in state court.

In her Reply,[12] Ms. Hunt reiterated that the fees were specific and that she is not seeking an award against the bankruptcy estate, but only against a non-debtor party, that the requested fees were reasonable under the *Johnson*[13] factors, that the fees requested were not excessive as they were not so "grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibility to the public."[14] Furthermore, the burden of proof was on the plaintiff and it is irrelevant how much defendants' attorneys' billed for the same time period. Lastly, Ms. Hunt disputes that the

---

[7] ECF No. 563-1, page 7 of 294.
[8] $1,497,275.00 less $158,036.69 equals $1,339,238.41. The Declaration does not explain the difference between this amount of $1,339,238.41 and the amount requested of $1,339,608.60, a difference of $370.19.
[9] The Declaration does not explain why the expenses increased from the $169,224.82 in paragraph 23 of the Declaration to the amount requested of $197,579.63 in Paragraph 23(b), a difference of $28,354.81.
[10] ECF No. 568, the Amended Response and Objection to Plaintiff's' Motion for Award of Attorneys' Fees.
[11] ECF No. 568, page 2, ¶2.
[12] ECF No. 569.
[13] *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-719 (CA5 1974),
[14] Citing to *Webb v. Dolgencorp, LLC*, No. 15-6949, 2016 U.S. Dist. LEXIS 169909, at *12 (E.D. La. 2016)

appeals were "an incredible waste of time and judicial resources" as set forth in the Defendants' Objection. Instead, she argues that she obtained an excellent result, notwithstanding that the appeals were unsuccessful.

A hearing was held on August 17, 2023, on the Motion for the Award of Attorneys' Fees, the Response and the Reply. Judge Jones issued a ruling on the record. In the transcript of that hearing, Judge Jones reiterates that he had requested that specific objections were to be raised, but the Response failed to do so, defendants failed to request him to "do anything about it."[15] So he went through the billing entries himself and decided to award $2,293,009.35 in fees and expenses. Based on him "going through the fee bills, making certain adjustments, striking through things. And then at the end of the day, totaling up that number."[16] No written judgment was entered after that hearing. Judge Jones resigned on October 16, 2023, and this case was reassigned to Judge Norman. Judge Norman entered an Order on the Motion for the Award of Attorneys' Fees based on the transcript of the hearing and awarded Ms. Hunt attorneys' fees and costs of $2,293,009.35 to be paid by Guero Benavides.[17] Thereafter a Final Judgment was entered by Judge Norman in the adversary awarding Ms. Hunt her reasonable attorneys' fees to be paid by Guero Benavides, individually.[18]

The Final Judgment and the Order on Attorneys' Fees were both appealed on December 19, 2023.[19] The District Court remanded the Order on Attorneys' Fees as to Amount Awarded on November 14, 2024, but affirmed the remainder of the Final Judgment.[20] The District Court found that the Bankruptcy Court's award of attorneys' fees was not an abuse of discretion; however, that the amount awarded lacked sufficient support. The District Court held that the Defendants specifically objected to the following "categories of entries; including time spent for multiple attorneys to attend trial, on matters in probate court, on Appellee's own dismissed appeals and on matters relating to Memo and claims by and against Ms. Hunt."[21] The District Court also discussed the difficulty in reviewing the billing entries as the majority of time billed was block billed.

---

[15] ECF No. 583, Transcript, page 62, lines 11-15.
[16] ECF No. 583 Transcript, page 64, lines 23-25 and page 65, lines 1-4.
[17] ECF No. 619.
[18] ECF No. 623.
[19] ECF Nos. 633 and 634.
[20] Civil Action No. 5:23-CV-00149, ECF No. 29
[21] Civil Action No. 5:23-CV-00149, ECF No. 29, page 13.

appeals were "an incredible waste of time and judicial resources" as set forth in the Defendants' Objection. Instead, she argues that she obtained an excellent result, notwithstanding that the appeals were unsuccessful.

A hearing was held on August 17, 2023, on the Motion for the Award of Attorneys' Fees, the Response and the Reply. Judge Jones issued a ruling on the record. In the transcript of that hearing, Judge Jones reiterates that he had requested that specific objections were to be raised, but the Response failed to do so, defendants failed to request him to "do anything about it."[15] So he went through the billing entries himself and decided to award $2,293,009.35 in fees and expenses. Based on him "going through the fee bills, making certain adjustments, striking through things. And then at the end of the day, totaling up that number."[16] No written judgment was entered after that hearing. Judge Jones resigned on October 16, 2023, and this case was reassigned to Judge Norman. Judge Norman entered an Order on the Motion for the Award of Attorneys' Fees based on the transcript of the hearing and awarded Ms. Hunt attorneys' fees and costs of $2,293,009.35 to be paid by Guero Benavides.[17] Thereafter a Final Judgment was entered by Judge Norman in the adversary awarding Ms. Hunt her reasonable attorneys' fees to be paid by Guero Benavides, individually.[18]

The Final Judgment and the Order on Attorneys' Fees were both appealed on December 19, 2023.[19] The District Court remanded the Order on Attorneys' Fees as to Amount Awarded on November 14, 2024, but affirmed the remainder of the Final Judgment.[20] The District Court found that the Bankruptcy Court's award of attorneys' fees was not an abuse of discretion; however, that the amount awarded lacked sufficient support. The District Court held that the Defendants specifically objected to the following "categories of entries; including time spent for multiple attorneys to attend trial, on matters in probate court, on Appellee's own dismissed appeals and on matters relating to Memo and claims by and against Ms. Hunt."[21] The District Court also discussed the difficulty in reviewing the billing entries as the majority of time billed was block billed.

---

[15] ECF No. 583, Transcript, page 62, lines 11-15.
[16] ECF No. 583 Transcript, page 64, lines 23-25 and page 65, lines 1-4.
[17] ECF No. 619.
[18] ECF No. 623.
[19] ECF Nos. 633 and 634.
[20] Civil Action No. 5:23-CV-00149, ECF No. 29
[21] Civil Action No. 5:23-CV-00149, ECF No. 29, page 13.

Hearing was held on February 27, 2025, to address the remanded issue of attorneys' fees. The Bankruptcy Court reopened the evidence to allow the parties to add any additional evidence in support of their arguments. Ben Broocks ("BB") and Shelby Jordan ("Jordan" or "SAJ") testified in support of their request for their fees, and Mark Taylor testified reiterating Defendants' Objections. One additional exhibit was discussed (ECF No. 680) in relation to Mark Taylor's testimony and admitted in the record. BB and Jordan relied on their previous submitted billing entries, again requesting $2,579,023.70.

## LEGAL ANALYSIS

The Court has an independent duty to review fee applications, notwithstanding the absence of objections by the United States Trustee, creditors, or any other interested party.[22] The Supreme Court has held that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney fees under federal statutes which provide for such fees.[23] The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. However, the lodestar method also allows discretion to adjust the lodestar amount.[24] The Court may also consider other factors, including the twelve *Johnson*[25] factors.

In assessing the reasonableness of the requested fees, the Court has broad discretion to award or curtail attorneys' fees under Section 330.[26] Furthermore, 11 U.S.C. § 330(a)(4)(A) mandates that "the court shall not allow any compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case. The party requesting a fee award has the burden of establishing the reasonableness of its request.[27] The Court has reviewed the billing submitted by Jordan & Ortiz, P.C. ("Jordan Billing") and Broocks Law Firm ("Broocks Billing"). The Jordan Billing contains entries by Shelby Jordan (SAJ), Antonio Ortiz (AO) and Chrystal Madden (CRM.

---

[22] *In re Busy Beaver Building Centers*, 19 F.3d 833 (3rd Cir. 1994). *See also In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 n. 1 (9th Cir. 1985); *In re Copeland*, 154 B.R. 693 (Bankr. W.D. Mich. 1993); 11 U.S.C. § 330(a)(1); Fed. R. Bankr. P. 2016.
[23] *See, e.g., Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711 (1987) (lodestar method used to calculate fees under Clear Air Act); *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)(lodestar method used to calculate fees under 42 U.S.C. § 1988); *Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir. 1993).
[24] *In re Cole*, 18-35182, 2020 WL 4577236 (Bankr. S.D. Tex. July 20, 2020).
[25] *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir.1974).
[26] *In re Woerne*r, 783 F.3d 266 (5th Cir. 2015).
[27] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995).

The Broocks Billing contains entries by Ben Broocks (BB), William Broocks (WB), Ben Broocks, Jr. (BJ).

### Block Billing/Duplicative work

Here, the Court is concerned with the time expended and the fee requested for certain tasks, as well as the sufficiency of time entries in this application. The billing entries in both the Jordan Billing and the Broock Billing are almost entirely "block billed"[28] and many are also redacted, making it difficult to ascertain what services were rendered. This is especially troubling given Judge Jones opinion requesting that Ms. Hunt file an "**itemized** request setting forth her requested attorney's fees and expenses."[29]

To assess the reasonableness of the requested fees, the Court must review the quantity, type, and complexity of pleadings in the case, as well as the quantity, type, and complexity of the debtor's schedules. Based on this information, the Court decides reasonable compensation. Therefore, it is important that time entries not be vague with respect to time expended on each individual task, and/or are not bundled.[30] The instant fee application contains numerous entries that are vague and/or lump services together. The entry in the time records of the Jordan Billing at 2/20/16 is illustrative. "Emails to [redacted] regarding copy of proposed suit against Trustees; potential for Rule 408 Settlement letter to Debtor and Debtor's counsel" (.60). The Defendants' Objection lists additional examples from both the Jordan Billing and Broocks Billing.[31] Furthermore, Mark Taylor testified that it was the Defendants' position that the Jordan Billing contained $259,880 and the Broocks Billing contained $632,065 in block billing entries. The court is unable to determine how much time was spent on each individual task and whether one task took substantially more time that the others. The court will therefore reduce the fees requested for time that was block billed, vague or bundled[32] by 35% or $312,180.75.

Requests for fees on account of unnecessary or duplicative work are also excessive.[33] In support of the Defendants' Objection regarding duplicative work, they point to the work billed for post-trial briefs after the December 2021 trial, starting in January 2022 through April 2022 by both

---

[28] Block billing is a legal billing practice in which multiple tasks are grouped together under a single time entry instead of itemizing each task individually.
[29] ECF No. 561, page 17.
[30] *In re Pettibone*, 74 B.R. 74 B.R. 293 at 307 (Bankr. N.D. Ill. 1987); *In re Amatex Corp.*, 70 B.R. 624, 627-628 (Bankr. E.D. Pa. 1985).
[31] ECF No. 568, paragraph 4. pages 3-4 of 59.
[32] 35% of $259,880 and 632,065 equals $312,180.75.
[33] *In re Cole*, *supra*.

Jordan and Broock and their paralegals and request that any amounts over $17,602.50 be struck. Attorneys are expected to exercise billing judgment. Examples of billing judgment include refraining from billing routine matters at a senior attorneys' premium rate when the junior attorney could perform the services, excessive supervision of a junior attorney, and excessive attorney conferences, without any justification. Here, the Court is concerned with the time expended and the fee requested for certain overlapping tasks, billings by multiple professionals for the same hearing, interoffice or client conferences. The Court agrees that some of this time is duplicative,[34] and reduces Jordan's Billing by $4,207.00 and Broocks Billing by $7,512.50 for a total reduction of the fees requested of $11,719.50.

**Multiple Attorneys**

After reviewing the evidence, the Court finds that more than two lawyers and one paralegal billing for the work or attendance at hearing, trials or other matters is excessive, and this additional billing will be cut. The Defendants specifically object to William Broocks's time entries on November 6, 2019. On November 6, 2019, BB billed 6.00 hours to attend trial, WB billed 4.00 hours and BJ billed 4.00 hours. In addition, SAJ billed 10 hours, CRM billed 6.00 hours, AO billed .70 hours and Melba Ramirez (MR) billed 3.70 hours. Accordingly, the Court reduces the requested fees by $1,862.00 for November 6, 2019.

In addition, Defendants object to the billing of four attorneys and two paralegals for the trial shown in the entries on May 3, 2021, to May 7, 2021. On May 3, 2021 SAJ billed for 10.0 hours, CRM billed for 9.00 hours, AO billed for 12 hours, BB billed 19.00 hours, WB billed 16.00 hours, BJ billed 16.00 hours; on May 4, 2021 Jordan billed for 11.0 hours, CRM billed for 8.40 hours, AO billed for 13 hours BB billed 19.50 hours, WB billed 16.00 hours, BJ billed 16.00 hours; on May 5, 2021 Jordan billed for 9.80 hours, CRM billed for 7.40 hours, AO billed for 10 hours, BB billed 15.00 hours, WB billed 16.00 hours, BJ billed 16.00 hours; on May 6, 2021 Jordan billed for 10.0 hours, CRM billed for 8.40 hours, AO billed for 12.50 hours, BB billed 17.00 hours,

---

[34] See entries on Jordan Billing for 4/12/17 both SAJ and CRM attended a deposition (5.00); 1/11/22 conference with BB by both SAJ (1.60) and AO (2.50), 2/28/22 SAJ 7.60) and AO (14.00) both billed for a trip to Laredo and a meeting to work on closing, 3/1/22 meeting between AO (3.00) and SAJ (3.60). See entries on Broocks Billing at 2/28/22 billing by BB and WB to attend meeting with co-counsel totaling 25.00 hours; 3/1/22 conference with SAJ, WAB and BJ 2.50 hours; both WB and BJ billed to attend same meeting 1.25 hours; 3/3/22 meeting between BB, WB, and BJ where all billed for the same meeting 4 hours; 3/5/22 conference between BB, WB and BJ where all billed for the same meeting 1.00 hour, 3/6/22 conference between BB, WB and BJ all billing for the same conference 2.50 hours, 3/14/22 conference between BB and WB 2.25 hours; 3/18/22 conference between BB and WB 1.50 hours; 3/28/22 conference between BB and WB .25 hours,

WB billed 17.00 hours, BJ billed 17.00 hours; and on May 7, 2021 Jordan billed for 4.0 hours, CRM billed for 4.40 hours, AO billed for 10.00 hours, BB billed for 16.00 hours, WB billed 8.00 hours, and BJ billed 8.00 hours. The total billed for all counsel and paralegals for these dates was 322.00 hours and billing of $86,107.50. The Court allows fees billed by SAJ, BB and CRM, disallowing the remaining requested fees of $36,287.50

The entries by counsel regarding attendance at the trial beginning November 30, 2021, through December 3, 2021, are also the subject of Defendants' Objection. Jordan billed for 11.0 hours, CRM billed for 8.00 hours, AO billed for 14 hours, BB billed 15.00 hours, WB billed 12.00 hours, BJ billed 12.00 hours for November" 30, 2021; SAJ billed 10.0 hours, CRM billed 9.0 hours and AO billed 10.00 hours, BB billed 15.00 hours, WB billed 12.00 and BJ billed 12.00 hours on December 1, 2021; SAJ billed 9.10 hours, CRM billed 5.00 hours, AO billed 9.00 hours, BB billed 15.00 hours, WB billed 12.00 hours and BJ billed 12.00 hours on December 2, 2021. The total billed for this time period for all counsel and paralegals in this matter was 202.10 hours and a total of $52,995.00. The Court allows fees billed by SAJ, BB and CRM, disallowing the remaining requested fees of $20,205.00.

Lastly, there are entries for multiple parties to attend closing arguments. On March 8, 2022, SAJ billed 9.00 hours, CRM billed 8 hours, AO billed 6.00 hours, BB billed 14.00 hours, WB billed 9.00 hours, BJ billed 9.00 hours. The next day SAJ billed 8.20 on March 9, 2022 with CRM billing 8.00 hours, AO billing 4.50 hours, BB billed 9.00 hours, WB billed 7.00 hours and BJ billed 7 hours. The Court allows fees billed by SAJ, BB and CRM, disallowing the remaining requested fees of $7,792.50.

### Probate and Appeals

The Defendants' Objection specifically identifies 113 entries in the Jordan Billing and 90 entries in the Broocks Billing that are related to probate matters, of which only 5 relate to this adversary and the judgment obtained by Ms. Hunt. These entries are in Exhibit B to the Defendants' Objection.[35] Accordingly, the amount requested for fees is reduced by $146,630.00 for these probate entries.

There are also objections for the entries regarding unsuccessful appeals. "The Fifth Circuit recently found that a trial court may reduce an attorneys' fees award "to the highest amount a reasonable factfinder could have awarded" if "it would be impossible to relate specific fees to the

---

[35] ECF No. 568, pages 18-29

issue upon which the [party] did not prevail.[36] Here, Ms. Hunt filed 3 different appeals between August 7, 2017, through November 29, 2018. The District Court dismissed all 3 appeals because they delayed final judgment and had little merit. This Court will reduce the attorneys' compensation awarded because of the unsuccessful appeals. The total deduction for unsuccessful appeals is $185,067.50.

### Travel Time/Clerical

Courts have broad discretion in awarding fees for time billed for travel.[37] Jordan states in his Declaration that all travel billed was one-way; however, the Court did not find this to be entirely accurate.[38] In addition, there were some entries where travel was billed twice on the same day.[39] There are no entries to show that Jordan or his paralegals were working while traveling. Therefore, the Court does not find it reasonable to bill at the full hourly rate for unproductive travel time. In looking at the Jordan Billing, SAJ billed 389.40 hours for time that included travel. His paralegal, CRM billed 48 hours and AO billed 50 hours. The entries reflect billing for travel by more than one individual on 11/29/21[40] and 2/28/22.[41] Due to the block billing, it is impossible to ascertain how much time was actually spent traveling, but the combined billing in the entries for these three individuals where travel was included totaled $176,010.00. The Court allows travel at 50% of each professional's rate. The Court will reduce time that was round trip, two trips per day and for time where more than one individual billed for travel on the same day for a total reduction of hours by SAJ of 15.60 hours or $6,240.00, and for CRM 2.60 hours totaling $390.00. The total reduction for travel in the Jordan Billing is $6,630.00.

---

[36] *Keiland Construction, L.L.C. v. Weeks Marine, Inc.*, 109 F.4th 406 (5th Cir. 2024) *citing Bamburg v. Air Systems, LLC* 324 So. 3d 213 (2nd Cir. 2021).
[37] *In re Rodriguez,* 517 B.R. 724, 735 (Bankr. S.D. Tex. 2014) (internal citations omitted.)
[38] See for example entry at 4/13/17 Trip to Laredo; meeting and conference with [redacted]; prepare for deposition; attend deposition; return to Corpus Christi; prepare for depositions of Carlos de Lachica and Manuel Benavides tomorrow. (11.50 hours).
[39] See entries at 9/13/18 where SAJ billed one hour as follows: "Trip to Laredo; meeting with [redacted] regarding Reply Brief; status of appeal; status of state court and the impact of a potential MSj without our pleadings; potential for motion to Abate CCL-1 until appeals are final." The same day SAJ billed for another trip to Laredo stating that "Trip to Laredo; meeting with [redacted] regarding all pending issues in State Court (1) discovery and our request for production to trustees; (2) Memo and any potential to resolve the disputes; (3) Notice of Depositions, contents and taking depositions, special considerations of depositions of Leslie Luttrell and Carl Barto; (4) trial and hearing preparation of deposition and trial," and billed 6 hours. See additional entries on 9/27/18 where he billed two trips to Laredo totaling 9.50 hours, 6/3/19 2 trips billed on the same day totaling 6 hours, and 8/26/29 where SAJ billed for trip to CC and trip to Laredo totaling 11.70 hours.
[40] CRM billed 6 hours and AO billed 12 hours.
[41] SAJ billed 7.6 hours and AO billed 14 hours.

Ben C. Broocks states in his Declaration that his office is in Austin and the trial of this matter was in Laredo, which is a four-hour drive from Austin, which meant that "approximately 8-hour road trip" was billed.  The Court also notes that some of the descriptions reflect that Ben. Broocks spent some of the travel time working,[42] while some other individual drove.  BB had 33 entries related to travel, and he worked in 6 of those entries.  Accordingly, the time requested for travel of 8 hours each on 27 entries will be reduced by half, or $43,200.00.  In addition, the Court reduces the multiple entries for travel by other employees of the Broocks Firm for travel on the same dates totaling $3,600.00.

Further, the services performed must be legal in nature, rather than clerical. This application contains many instances of the billing for work which is routinely performed by secretaries and should not be billed to the client. Case law suggests that "ministerial tasks" (typing, file organization, document preparation, searching or filing documents on PACER, etc.) performed by a professional or paraprofessional should not be allowed as a separate charge because it is part of the office overhead, which should already be built into the counsel's hourly rate.[43]  The Defendants' Objection states paralegal entries of 30 hours in preparing deposition extracts are excessive.  See also Jordan Billing and Broocks Billing entries.[44]  The Court reduces the requested fees by $6,287.50 for these clerical entries.

**THEREFORE, IT IS ORDERED** that the Motion for Award of Attorneys' Fees in Favor of Norma Hunt is approved in part and denied in part, and Ms. Hunt is awarded total attorneys' fees and costs of $1,797,561.45 to be paid by Guero Benavides.

SIGNED 03/06/2025

Jeffrey Norman
United States Bankruptcy Judge

---

[42] See entries at 10/8/18, 1/28/18, 3/21/19, 5/26/20, 1/6/21, and 11/27/21.
[43] *In re Dimas,* LLC, 357 B.R. 563, 577 (Bankr. N.D. Calif. 2006).
[44] See entries on Jordan Billing by CRM on 4/4/17 (.60); 4/6/17 (.50); 4/7/17 (1.00); 4/10/17 (3.70); 4/12/17 (.40); 5/2/17 (.50); 5/30/17 (.40); 8/17/18 (.20); 8/21/18 (.20); 9/11/18 (.70); 9/21/218 (.50); 9/24/18 (.70); 11/26/18 (.10); 12/14/18 (2.50); 1/2/19 (.40); 1/26//19 (2.00); 2/14/19 (.50); 3/13/19 (.50); 4/15/19 (.50); 5/22/19 (.50); 5/30/19 (.20); 6/24/19 (.40); 7/23/19 (.50); 8/6/19 (.50); 8/9/19 (.50); 8/19/19 (.50); 8/20/19 (.50); 10/1/19 (.20); 10/7/19 (.50); 10/23/19 (.30); 4/30/21 (1.50); 1/20/22 (.80); 1/21/22 (2.40); and 3/24/22 (.90).  See Broocks' entries for BJ at 1/18/19 (8.00); 5/15/19 (4.00); 4/18/21 (3.50); 1/6/22 (3.00); and entry for WB at 4/6/22 (1.00).